**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SHARON SAUTNER,

                Plaintiff,             **CASE NUMBER: 05-73252**
                                        **HONORABLE VICTORIA A. ROBERTS**

v.

FLEETWOOD ENTERPRISES, INC.,
MICHAL ENTERPRISES, INC., d/b/a
WALT MICHALS R.V. CENTER,
and BANK OF AMERICA SPECIALTY
FINANCE, Jointly and Severally,

                Defendants.
_____/

<u>OPINION AND ORDER GRANTING</u>
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

**I.      INTRODUCTION**

This matter is before the Court on Defendants' Motion for Summary Judgment

(Doc. #58).  For the reasons stated the Court **GRANTS** Defendants' motion.

**II.     BACKGROUND**

On March 27, 2004, Sharon Saunter ("Saunter") purchased a 2004 Fleetwood

Providence Motor Home ("motor home" or "vehicle") from Michal Enterprises, Inc., d/b/a

Walt Michals R.V. Center ("Michal").  The motor home consists of a chassis and a

coach.  The chassis, supplied by Freightliner Customer Chassis Corporation, contains

the engine, wheels, frame, and other automotive components.  The coach contains the

interior living quarters.  Fleetwood Motor Homes of Indiana, Inc. ("Fleetwood")

manufactured the coach portion of the motor home and assembled the coach onto the

1

chassis.

Fleetwood provided a "Limited" warranty for repair or replacement of all non-structural manufacturing defects in workmanship or material for a period of one year or 15,000 miles. The Fleetwood warranty provides:

> Your new motor home, including the structure, plumbing, heating and electrical systems, all appliances and equipment installed by the manufacturer, is warranted under normal use to be free from manufacturing defects in material or workmanship. Appearance imperfections, or damage to paint, graphics, exterior materials, or upholstery that may have occurred prior to delivery are normally corrected during the inspection process at the manufacturing plant or at the dealership.

> The warranty extends to the first retail purchaser and his transferees and begins on the date of original retail delivery or the date the motor home is first placed into service as a rental, commercial or demonstrator unit (whichever occurs first), the warranty extends for the following periods:

> 1. For all defects (other than structural) the warranty extends for a period of one year from such date or until the unit has received 15,000 miles of use as determined by the mileage shown on the odometer (whichever occurs first).

> 2. Structural defects, 3 years; structural defects are limited to the following: roof structure, sub-floor structure, and Vacubond walls.

> Written notice of defects must be given to the selling dealer or manufacturer not later than ten (10) days after the expiration of the warranty period.

Def. Ex. D.

The Limited warranty is outlined in the Owner's Manual, which Saunter received when she purchased the vehicle. Michal did not provide a warranty; in fact, it disclaimed any warranties. The purchase agreement states: "All goods, services and vehicles sold hereunder are sold 'AS IS' unless Dealer furnishes Buyer a written warranty or service agreement." The warranty disclaimer located on the back page of the purchase agreement signed by Saunter states:

> In the event the vehicle described on the front of this order is either a new vehicle still subject to a manufacturer's warranty, dealer expressly disclaims all warranties, express and implied (including implied warranty of merchantability or fitness for a particular purpose) on said vehicle. Further, Dealer neither makes nor authorizes any other person to make on Dealers behalf, any warranty in conjunction with the sale of said vehicle. As to any manufacturer's warranty extended to buyer by manufacturer, dealer specifically disclaims any liability thereunder, said manufacturer's warranty being between buyer and manufacturer only.

Def. Ex. B.

Saunter purchased the motor home to use as a permanent home when she travels with her husband on business. Her husband works as a consultant in the oil industry and travels extensively. Instead of staying in hotels, they lived in the motor home from the time of purchase until March, 2006. During that time, Saunter incurred 9,000 miles and took at least six trips in the motor home, including trips to Arizona, Oklahoma, and Utah. Def. Ex. G. She claims several problems arose with the motor home requiring repair.

For instance, Saunter alleges that since purchase, she has had over 100 complaints, 92 repair attempts, and over 66 days with the vehicle out of service. Pl. Ex. 2. Her complaints include defects in the structure and build of the vehicle, electrical systems, interior amenities, plumbing, and piping. Many of Saunter's complaints were addressed at RV service stations free of charge pursuant to the Fleetwood warranty. Pl. Ex. 5. Michal, at Saunter's request, only installed equipment and performed minor repairs in the coach portion of the vehicle on the day Saunter received the motor home. The two most significant problems Plaintiff complains of concern the motor home's slide-out and waste water plumbing system.

The slide-out is a section in the motor home that can expand to create more

living space.  Saunter says that once while driving the motor home she noticed the slide-out moving.  When the motor home is in motion the slide-out should be immobile. Afraid that the slide-out would fall out, Saunter notified Fleetwood and had the slide-out serviced at a facility in Oklahoma.  The service facility told Saunter that placing a metal bar, lock-out bar, along the inside wall of the slide-out would fix the problem.  Saunter purchased the lock-out bar.

In Utah, Saunter had LaMesa RV re-inspect the slide-out.  A LaMesa repair agent discovered that the slide-out was properly functioning but that the braking mechanism which allows the slide-out room to be manually opened or closed was turned off.  Therefore, he explained the slide-out was susceptible to moving when the motor home was driven.  The LaMesa agent turned the braking mechanism on, test drove the motor home, and found no problems. Saunter, however, continued to use the lock-out bar.

Among other things, Saunter began having problems with the black water tank, which holds waste from the motor home's plumbing system.  In December 2005, the black water tank malfunctioned and flooded the entire living area of the vehicle with fecal matter.  Saunter did not report this incident to Fleetwood or Michal.  Instead, her husband repaired the black water tank.  Nevertheless, she alleges that this defect and many others over time became apparent and so severe that the motor home is no longer usable.

Based on the alleged defects Saunter filed suit in Wayne County Circuit Court in Michigan, against Michal, Bank of America, and Fleetwood (collectively "Defendants") for a refund of the purchase price under the Uniform Commercial Code, on theories of

revocation of acceptance and breach of warranty.  She also alleges violations of the

Magnuson-Moss Warranty Act ("MMWA") and the Michigan Consumer Protection Act

("MCPA").  Defendants removed the case to this Court and filed a motion for summary

judgment.

## III.    STANDARD OF REVIEW

Under FED. R. CIV. P 56(c), summary judgment may be granted "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law."  *Copeland v. Machulis*, 57 F.3d

476, 478 (6th Cir. 1995)*.*  The moving party bears the initial burden of showing that

there is no genuine issue of material fact.  *Snyder v. AG Trucking Co.*, 57 F.3d 484, 488

(6th Cir. 1995).  To meet this burden, the movant may rely on any of the evidentiary

sources listed in Rule 56(c).  *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th

Cir. 1995).

Once the moving party meets its burden, the burden shifts to the nonmoving

party to produce evidence of a genuine issue of material fact.  Rule 56(e); *Cox*, 53 F.3d

at 150.  The nonmoving party cannot rest on its pleadings, but must present significant

probative evidence in support of its complaint.  *Copeland*, 57 F.3d at 479.  The mere

existence of a scintilla of evidence to support the nonmoving party position will be

insufficient; there must be evidence on which a jury could reasonably find for the

nonmoving party.  *Snyder*, 57 F.3d at 488; *Tolton*, 48 F.3d at 941.

The court must view the evidence in the light most favorable to the nonmoving

party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox*, 53 F.3d at 150.

## IV.    ANALYSIS

Defendants claim that: (1) Michal is not subject to a revocation claim because it adequately disclaimed any warranties; (2) because Fleetwood and Saunter were not in privity of contract, revocation or a refund of the purchase price is not an available remedy against Fleetwood; and (3) there are no defects with the slide-out and black water tank of the motor home.  In response, Saunter argues that (1) Michal's disclaimer of warranties does not bar her claim; and (2) a revocation is actionable against Fleetwood regardless of the lack of privity.  Plaintiff does not respond to Defendant's arguments concerning the slide-out and black water tank.

## I.    Michal

Saunter contends that Michal breached its implied warranties and violated the MCPA by selling her a defective motor home.  Specifically, she argues that Michal misrepresented the motor home's fitness for *her* particular purpose.  She claims to have explained her need to use the vehicle as a temporary home and that Michal promised a new motor home that was free of defects and fit to use as a home.  Saunter argues that her reliance on Michal's false representations is grounds for revocation of acceptance. Saunter limits her claims against Michal to revocation of acceptance and violations of the Michigan Consumer Protection Act.[1]

---

[1]Count III of Saunter's complaint alleges that Michal violated Michigan's Motor Vehicle Service and Repair Act ("MVSRA"), Michigan Comp. Laws § 257.1301, *et seq.* Michal seeks summary judgment on this claim.

Michal correctly argues that dismissal is warranted because the MVSRA does

### 1. Revocation of Acceptance

Michal asserts that Saunter's revocation claim must fail because the motor home was purchased "AS IS" and it expressly and conspicuously disclaimed all warranties. Saunter does not dispute that the disclaimers are valid; rather, she asserts that a claim for revocation can still be brought against an immediate seller that disclaims all warranties.

Every contract for the sale of goods carries an implied warranty of merchantability and may also include a warranty of fitness for a particular purpose unless such warranties are excluded or modified. The Uniform Commercial Code ("UCC") and the Michigan equivalent provide: a warranty that goods sold are merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. M.C.L. § 440.2314. A seller can exclude or modify the implied warranty of merchantability by mentioning merchantability and making sure all written agreements disclaim the warranties conspicuously. M.C.L. § 440.2316(2). A seller may also exclude or modify an implied warranty of fitness for particular purpose.

---

not cover the dwelling portion of a motor home. The MVSRA's definition of "motor vehicle" expressly excludes " the dwelling or sleeping portions of a motor home, trailer, or any recreational vehicle having similar facilities which are not directly connected with the drive mechanism of the vehicle or other area of repair which would require certification of motor vehicle mechanics as specified in this act or rules promulgated pursuant to this act." M.C.L. § 257.1302(d). Since Michal only repaired portions of the coach, Saunter's claim under the MSVRA would fail as a matter of law. It appears, however, that Saunter decided not to pursue this claim. In her response to Defendant's motion for summary judgment, she states that her claims against Michal are limited to revocation of acceptance and the MCPA. *See* Plaintiff Response Brief at 1. Therefore, the Court will summarily dismiss this Count.

The exclusion also must be in writing and conspicuous.[2]  *Id.*; *Davis v. LaFountaine*, 271 Mich.App. 68 (Mich.App. 2006)(holding disclaimer of implied and express warranties are enforceable under Michigan law).  Michal argues that it properly disclaimed any implied warranties to Saunter.  The Court agrees.

The parties' purchase agreement contained language sufficient to exclude implied warranties under Michigan law.  While Saunter makes much of her alleged reliance on Michal's assurances that the motor home could be used as a home when in fact the manufacturer discouraged such use, Michal's disclaimer expressly provides no warranty for a particular purpose.  The front page of the purchase agreement, which Saunter signed, states "SUBJECT TO TERMS AND CONDITIONS BELOW AND ON REVERSE SIDE OF THIS ORDER."  On that same page in red ink, the agreement states "all goods, services, and vehicles sold hereunder are sold 'As IS' unless Dealer furnishes Buyer with a written warranty or service agreement, or the used car sticker indicates otherwise (See paragraph 10 on reverse side)."  On the reverse side, there is a heading, entitled "WARRANTY DISCLAIMER," which states that Michal disclaims all implied warranties.

The disclaimer was in writing and stated conspicuously – in capital letters –  that all warranties of merchantability or fitness for a particular purpose were disclaimed.  *See Davis*, 271 Mich.App. at 76-78; *see also Ducharme v. A&S RV Center, Inc.*, 321 F.Supp.2d 843, 852 (E.D.Mich. 2004); *Computer Network, Inc. v. AM General Corp.*,

---

[2]Michigan Courts hold that disclaimers are sufficiently conspicuous if it is in larger or other contrasting color type.  *Davis v. LaFountaine*, 271 Mich.App.  68, 76-78 (Mich.App. 2006).  M.C.L. 440.1201(10) states that the test for conspicuousness is "whether attention can reasonably be expected to be called to it."

265 Mich.App. 309 (Mich.App. 2005).  Thus, Michal validly disclaimed the implied

warranties.  The only remaining issue is whether Michal's disclaimers prevent Saunter

from pursuing a revocation of acceptance claim.

Michigan statute, M.C.L. § 440.2608 allows a buyer to revoke acceptance under

certain circumstances.  Under this statute,

> (1) The buyer may revoke his acceptance of a lot or commercial unit whose
> nonconformity substantially impairs its value to him if he has accepted it (a)
> on the reasonable assumption that its nonconformity would be cured and it
> has not been seasonally cured; or (b) without discovery of such
> nonconformity if his acceptance was reasonably induced either by the
> difficulty of discovery before acceptance or by the seller's assurances.
>
> (2) Revocation of acceptance must occur within a reasonable time after the
> buyer discovers or should have discovered the ground for it and before any
> substantial change in condition of the goods which is not caused by their own
> defects.  It is not effective until the buyer notifies the seller of it.
>
> (3) A buyer who so revokes has the same rights and duties with regard to the
> goods involved as if he had rejected them.

M.C.L. § 440.2608.

Michal maintains that Saunter's revocation claim fails because it properly disclaimed

any warranties and the "As IS" disclaimer prevents a finding that the motor home did not

comply with the contract.

Courts have held that "if the only relevant language in the agreement as to

quality has been effectively disclaimed, no nonconformity in the goods sufficient for

revocation can exist." *Piddock v. Ewing*, 371 F.Supp.2d 870, 881 (E.D. Mich

2005)(quoting *Watson v. Damon Corp.*, No. 1:02-CV-584, 2002 WL 32059736

(W.D.Mich. Dec. 17, 2002); *see also Harden v. Ford Motor Co.*, 408 F.Supp.2d 309, 312

(E.D.Mich. 2005).  In determining that revocation was unavailable, the courts examined

the parties contract to see if all warranties were disclaimed and if the goods were sold "AS IS." *Id.* In *Davis*, the Michigan Court of Appeals noted that to the extent a plaintiff's revocation claim rests on alleged defects of the vehicle, the question becomes whether the vehicle can be said to be nonconforming under the plaintiff's contract. *Id.* at 81. In determining the existence or non-existence of a nonconformity, the court must look to the terms of the parties contract as well as the law of warranty. *Id.* at 82. The Uniform Commercial Code 2-608, on which MCL 440.2608 is based, instructs courts to disfavor disclaimers that purport to disclaim responsibility for what the seller has in essence agreed to sell. *Id.* If, however, the relevant language in the agreement as to quality has been effectively disclaimed, there is no nonconformity in the goods sufficient to establish a claim for revocation. *Id.* In fact, comment 7 of 2-316 states that "If the goods are sold 'as is,' buyer takes the entire risk as to the quality of goods."

Based on this reasoning, the *Davis* Court held that for the purposes of revocation under M.C.L. § 440.2608, nonconformity is a failure of the goods sold to conform to legitimate expectations arising from the contract. When goods are sold "As IS," plaintiffs got the vehicle, even with alleged defects, for which they bargained. *Id.*; *see also Henderson v. Chrysler Corp.*, 191 Mich.App. 337, 341-343 (Mich.App. 1991).

Because Saunter claims she bargained for a new vehicle, she asserts that *Davis* is not applicable.[3] Further, Saunter argues that disclaimers are irrelevant to revocation claims against an immediate seller. In support of this contention, she cites *Head v.*

---

[3]Saunter also claims that *Davis* is inapplicable because the seller in that case was bankrupt. This fact, however, was not germane to the Court's analysis regarding the application of M.C.L. § 2608, and nor is it relevant to this case.

*Philips Camper Sales & Rental, Inc.*, 234 Mich.App. 94 (1998). Yet, her arguments and reliance on *Head* are misplaced.

In *Head*, the buyer of a pop-out camper brought claims against the seller for revocation of acceptance due to alleged defects that the seller attempted to repair. *Id.* at 101. Unlike here, the *Head* Court addressed "the effects of a seller's attempts to repair when a buyer invokes revocation of acceptance" and whether the seller has a right to cure. *Id.* Here, the issue is whether Michal's disclaimers of all warranties bars Saunter from revoking acceptance. The Court finds that it does.

Saunter's purchase agreement states that Michal sold the vehicle "As IS". Despite Saunter's contention she was assured the motor home would be new, she took the risk as to the quality of the motor home. As a result, her claim for revocation of acceptance fails.

### 2.      Michigan Consumer Protection Act

Next, Saunter claims that Michal violated the MCPA. M.C.L. § 445.901 *et. seq*, prohibits the use of "unfair, unreasonable, or deceptive methods, acts, or practices in the conduct of trade or commerce." M.C.L. § 445.903(1). Saunter asserts that Michal engaged in unfair and deceptive trade practices by attempting to disclaim all implied warranties of merchantability and fitness for a particular purpose and failing to provide a refund for all the alleged defects in violation of sections 445.903(c), (e), (g), (n),(p), (q), (s), (t), (u), (y), (bb), and (cc). Michal contends that there is no factual basis for Saunter's claim because: (1) she fails to establish a breach of any warranties by Michal; and (2) goods purchased primarily for business purposes are not protected by the MCPA.

11

A vehicle purchaser cannot assert a claim against a seller alleging violation of the MCPA based on warranty-related representations when the seller made no express or implied warranties. *See Harden v. Ford Motor Co.*, 408 F.Supp.2d 309, 314 (E.D.Mich. 2005); *Ducharme*, 321 F.Supp.2d at 856. Moreover, when a plaintiff's MCPA claim is based on breach of warranty claims which are dismissed, as here, courts have also dismissed the MCPA claim. *Id.* If there is no basis for a breach of warranty claim, it follows, then, that there is no basis for a MCPA claim based on the alleged breach.

Saunter insists, however, that her claim is cognizable because Michal engaged in numerous other violations independent of the breach of warranty claims. She notes that the MCPA's prohibited acts include: causing a probability of confusion or misunderstanding as to the legal rights, obligations, or remedies available to a contracting party. § 445.903(1)(n). While this is true, Saunter's allegations against Michal are ground in her claim for breach of warranty. Her complaint states that Defendants violated § 445.903(1)(n) by attempting to disclaim implied warranties in violation of the Magnuson-Moss Warranty Act, providing confusing statements in its warranty, making material representations that the motor home was fit for a particular purpose, and failing to conspicuously disclose or explain any warranties. The crux of Saunter's claim under this section and others still relies on finding that Michal breached its warranty.

Further, the MCPA does not protect goods primarily purchased for business or commercial use. M.C.L. § 445.901 *et seq.*; *Computer Network, Inc. v. AM General Corp.*, 265 Mich.App. 309, 324 (Mich.App. 2004)(citing *Zine v. Chrysler Corp.*, 236 Mich.App. 261 (1999)). When deposed, Saunter testified that the motor home was

12

purchased primarily for business travel and that her husband claims the motor home as a business tax deduction. Def. Ex. F. Thus, Michal argues that her claim should be dismissed on this basis alone. But Saunter asserts that the motor home – while used in connection with her husband's business travels – was purchased as a home. She further notes that the motor home is not used as an office or business home and was purchased in her name rather than her husband's business.

In *Zine v. Chrysler*, the Michigan Court of Appeals held that the MCPA did not protect a plaintiff who bought a truck primarily for business use. 236 Mich.App. 261 (1999). The Court noted that even though the plaintiff stated he also purchased the truck for personal use, the plaintiff's inclusion of a cargo box and his company logo on the truck were dispositive of business rather than personal use. *Id.* Moreover, the Court found that since over 80% of the miles accumulated by the plaintiff were for business use and the truck was claimed as a business deduction, reasonable minds could not differ on the business use of the truck. *Id.*

*Zine* demonstrates that the relevant inquiry is how the plaintiff puts the consumer good to use. A truck , like a motor home, can be purchased for business or personal use. Therefore, it is the primary way in which Saunter utilizes the motor home that determines whether the MCPA applies; not whether the motor home, itself, is a consumer good -- as Saunter argues.

Saunter admits the home was purchased for travel to job sites in conjunction with her husband's business. The motor home was also purchased as her primary residence because she sold her permanent home. Almost all of the miles put on the motor home were from her husband's business trips. Although it appears that Saunter

primarily used the motor home for business purposes, the Court finds that reasonable minds could differ as to whether the motor home was used for business or simply as a home.  However, it is unnecessary to send this issue to a jury.  Because Saunter's claims are dependent on her breach of warranty claims, which the Court is dismissing, her MCPA claims are also dismissed as a matter of law.

## II.     Fleetwood

Fleetwood seeks partial summary judgment.  Despite Saunter's numerous arguments in defense of her claims against Fleetwood for breach of express and implied warranties, Fleetwood does not challenge these claims.  Instead, It requests the Court to find as a matter of law that: (1) Saunter is not entitled to a refund against a remote manufacturer under Michigan law and the Magnuson-Moss Warranty Act; and (2) there is no defect or non-conformity with the slide-out or black water tank.

### A.     Revocation of Acceptance as a Remedy

Because Fleetwood offered a limited warranty, Saunter argues that she is entitled to revoke acceptance of the motor home as a remedy under Michigan law and the MMWA.  Fleetwood claims that even if Saunter can establish that Fleetwood breached its limited warranty, her claim fails because the parties lack contractual privity. Saunter maintains privity is not required.

Revocation of acceptance under UCC § 2-608 and the Michigan equivalent M.C.L. § 440.2608 is generally used against an immediate seller.  M.C.L. § 440.2608. This statute allows a buyer to revoke acceptance of a consumer good whose nonconformity substantially impairs its value to him.  Contractual privity controls the

14

availability of this remedy.  *Henderson v. Chrysler Corp.*, 191 Mich.App.  337, 341-343 (Mich.App. 1991).

Although it is undisputed that Saunter and Fleetwood, the manufacturer, are not in contractual privity, Saunter argues that the revocation of acceptance remedy is nonetheless available.  She cites *Pack v. Damon Corp.*, 434 F.3d 810 (6th Cir. 2006) for the proposition that privity is not required.  In *Pack*, the Sixth Circuit held that a buyer's implied warranty claims under the Michigan UCC do not require privity.  *Id.  Pack*, however, involved of whether a purchaser could maintain an implied warranty claim against a remote manufacturer despite lack of privity.  Given *Pack's* focus on the ability to bring a claim – rather, than the issue of whether privity is required to invoke the UCC's revocation of acceptance remedy -- the Court finds its holding inapplicable.

The weight of authority under Michigan law opposes remote revocation.  In 1991, the Michigan Court of Appeals held that privity is required and "revocation of acceptance is not available against a manufacturer."  *Henderson*, 191 Mich.App. at 477; *see also Jellison v. Fleetwood Enter. Inc.,* No. 03-71502, 2004 U.S. Dist. Lexis 28835, *29 (E.D.Mich. April 7, 2004); *Computer Network Inc. v. Am General Corp.*, 265 Mich.App. 309 (Mich.App. 2005).

In *Henderson*, the Court relied on the plain language of the revocation provision, M.C.L. § 2608 – that is, the provision allows a buyer to revoke his acceptance and that acceptance is inextricably between the buyer and its immediate seller –  to conclude that privity is required.  *Id*. at 342.  *Henderson*, admittedly decided before *Pack*, "represents the Michigan Court of Appeals stance that an express warranty extending directly from the manufacturer to the purchaser does not constitute a contract for

15

purposes of privity, at least to the extent a consumer seeks to allege revocation of acceptance under the UCC." *Chiasson v. Winnebago Indus.*, No. 01-CV-74809, 2002 WL 32828652, *10 (E.D.Mich. 2002); *see also Michels v. Monaco Coach Corp.*, 289 F.Supp.2d 642, 649 (E.D.Mich. 2003). No Michigan court has questioned *Henderson*'s holding. Therefore, this Court finds that the Sixth Circuit's holding in *Pack* did not invalidate this rule. Hence, under Michigan law Saunter may not pursue the revocation of acceptance remedy against Fleetwood.

Nor can she invoke the revocation of acceptance remedy under the MMWA. Where privity is required to revoke acceptance under state law, courts have held that privity is also required to invoke revocation of acceptance as a remedy under the MMWA. *Long v. Monaco Coach*, No. 3:04-CV-203, 2006 WL 2564040, *5 (E.D.Tenn. August 31, 2006). MMWA allows a consumer "who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation [under the Act], or under a written warranty, implied warranty, or service contract" to file suit in any state or federal district court seeking damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). To state a breach of warranty, express or implied, under the MMWA, a plaintiff must show: (1) that the goods are subject to a warranty and are nonconforming; (2) that the seller was given a reasonable opportunity to cure the defects; and (3) the seller failed to cure the defects within a reasonable time or within a reasonable number of attempts. *Temple v. Fleetwood Enter.*, 133 Fed.Appx. 254 (6th Cir. 2005).

Section 2304 of the MMWA, which only applies to "full" warranties, allows for a refund for or replacement without charge of a product when the product contains

defects after a reasonable number of attempts to remedy the defect.  15 U.S.C. § 2304(a)(4).  The MMWA, however, is silent as to the types of remedies available for breach of an express *limited* warranty.  Thus, when a manufacturer only offers a limited warranty, Courts look to state law to determine the plaintiff's rights to damages or other legal and equitable relief.  *Jellison*, 2004 U.S. Dist. Lexis 28835 at 31; *see Shimmer v. Jaguar Cars, Inc.*, 384 F.3d 402 (7th Cir. 2004); *Long v. Monaco Coach*, No. 3:04-CV-203, 2006 WL 2564040 (E.D.Tenn. August 31, 2006).

The Sixth Circuit has not addressed revocation of acceptance under the MMWA as an available remedy for breach of a limited warranty.  Since the Sixth Circuit determined that under Michigan law privity is no longer required for a purchaser to recover from a remote manufacturer for breach of implied warranties, Saunter argues that a lack of privity should not preclude the available remedies.  However, Michigan courts retain the privity requirement when determining whether the remedy of revocation of acceptance is available upon breach.  *Henderson*, 191 Mich.App. at 477; *see e.g. Sheehan v. Monaco Coach Corp.*, No. 04-C-717, 2006 WL 208689, *8 (E.D.Wis. Jan. 5, 2006)(noting that under Florida law contractual privity is not required for a consumer to bring a breach of warranty claim, but is required to invoke the revocation of acceptance remedy).  As discussed above, under Michigan law, revocation of acceptance is not an available remedy in the absence of privity.

Saunter's purchased the motor home from Michal.  No contract was formed between Saunter and Fleetwood.  And, Saunter cites no authority from a Michigan court or this circuit that allows revocation of acceptance in the absence of privity.  Although, many courts in other jurisdictions are split on this issue, this Court believes that the

17

proper inquiry to determine whether revocation of acceptance is an available remedy under the MMWA is to look to the available remedies for breach under state law. *See Schimmer*, 384 F.3d at 405 ("When the plaintiff relies on state law causes of action to bring a claim under the [ACT] . . . [the court] then look[s] to state law to determine the remedies available."). To date the majority of cases under Michigan law and the UCC hold that goods are to be returned to the immediate seller only. Since there is no privity of contract between Saunter and Fleetwood, revocation of acceptance is not an available remedy to Saunter under Michigan law or the MMWA. Fleetwood is granted summary judgment.

**B.**     **Slide-Out and Black Water Tank**

Fleetwood argues that summary judgment is appropriate on Saunter's claims of defects with the slide-out and the black water tank. In support, Fleetwood presents evidence that there is no unrepaired defect in the slide-out, and the black water tank is not covered under warranty. Saunter argues Fleetwood breached this express warranty by failing to repair her alleged defects. In addition to the slide-out and black water tank problems, Saunter identified over 100 complaints, 92 repairs, and 66 days the motor home was out of service while covered by the warranty. Therefore, she argues that genuine issues of material fact exist as to whether: (1) the motor home was free of manufacturing defects; (2) the repairs were made in accordance with the guarantees under the express warranty; and (3) if 66 days out of service constitutes a breach of the warranty. Although Saunter does not directly respond to Fleetwood's black water tank arguments, she does assert that each incident is not dispositive of her claim and it is

Fleetwood's failure to cure the multiple defects that is at issue.

### 1.     Slide-Out

The Court must look to the pleadings, exhibits, and affidavits provided by both parties to determine whether a genuine issue of fact exists.  Fleetwood presents the following evidence to establish that the slide-out is not defective: (1) Saunter's testimony that she did not have any problems with the slide-out after purchasing the lock-out bars; (2) an affidavit stating that the slide-out will move slightly if the brake motor is turned off; (3) the LaMesa work order stating that system worked properly after the brake motor was engaged; and (4) Saunter's and her husband's testimony that they have not attempted to drive the motor home without the lock-out bars after the brake motor switch was engaged.  Despite Saunter's contentions that the slide-out remains defective and unrepaired, she presents no evidence in support.

In a sworn affidavit, Bryan Guaghan, a Dispute Resolution Administrator for Fleetwood Motor Home, explains that the slide-out is normally opened and closed via an electronic motor that is operated by an electrical switch inside the motor home.  Def. Ex. C.  The electrical switch contains a breaking mechanism that prevents the slide-out from moving, which is located under the motor home.  *Id.* If the electrical switch is not functional or there is no electrical power to operate the switch, the braking mechanism must be turned off to allow the user to manually close or open the slide-out with a hand crank.  Id.  When the motor braking mechanism is turned off, the slide-out may move slightly if the vehicle is in motion.  *Id.*  A lock-out bar, as its name suggests, is a metal bar that prevents the slide-out from moving outward.  *Id.*

When LaMesa RV inspected Saunter's motor home, it discovered that the motor braking mechanism was turned off. According to the work order, LaMesa engaged the braking mechanism and the slide-out locked in place. Pl. Ex. 5. LaMesa did not find any indication that the mechanism was defective or malfunctioning. Although Saunter makes much of the fact that one repair station recommended the use of the lock-out bar and LaMesa and Fleetwood informed her that the motor home was not designed to use lock-out bars, her deposition testimony makes clear that she never tested the unit without the lock-out bars after LaMesa inspected the unit. Def. Ex. F. Saunter and her husband testified that they were just too afraid to use the unit without the lock-out bar. Def. Ex. F; G. Therefore, they do not know if the slide-out was repaired or continues to move.

Without more, there is no evidence that the system was defective, is defective, or remains unrepaired. Generally, summary judgment is granted and a breach of warranty claim is dismissed when a plaintiff fails to present evidence that the alleged defects with the motor home was covered by a warranty, that he gave the manufacturer or dealer a reasonable opportunity to repair the defects, and that one or more of the defects still existed after that reasonable time. *See Temples v. Fleetwood*, 133 Fed.Appx. 254 (6th Cir. 2005) (granting summary judgment because there was no evidence that any defects or problems continued to exist after the warranty period expired); *Treadway v. Damon Corp.*, No. 03-CV-73650, 2004 WL 3372010 (E.D.Mich. Sept. 30, 2004)(holding that a reasonable jury could not find that the one-inch slide-out misalignment constitutes a defect in parts or materials under the limited warranty, when the plaintiff admitted, there were no current problems with the alleged defect); *Ducharme v. A&S RV Center*

*Inc.*, 321 F.Supp.2d 843 (E.D.Mich. 2004)(holding that the plaintiff did not have a viable breach of warranty claim because the alleged defects were remedied).

The evidence presented by Fleetwood suggests that the slide-out actually functioned properly – that is, it moved and could be moved manually when the braking mechanism was turned off. There is no evidence that the alleged defect still exists since service by LaMesa. Based on this, the Court finds that Fleetwood presented enough evidence to shift the burden to Plaintiff to produce evidence of a genuine issue of material fact.

Saunter fails to do so. Saunter asserts that Gaughan's affidavit is self-serving and unreliable because he did not inspect the motor home to determine if the slide-out is defective. But, the fact remains that Saunter produces no evidence to show the slide-out is defective absent the lock-out bar or that use of the lock-out bar is still necessary.

As Saunter points out, the slide-out is only one of her 100 complaints. Therefore, the Court notes that her breach of warranty claim is still cognizable. However, her failure to produce evidence from which a reasonable jury could conclude that the alleged nonconformity with the slide-out is a defect in the material or workmanship of the motor home establishes summary judgment is appropriate as to this alleged defect.

### 2. Black Water Tank

Similarly, Saunter fails to produce evidence of a genuine issue of material fact regarding the black water tank. Saunter lists the black water tank malfunction as evidence of the manufacturing defects in the motor home and Fleetwood's breach of warranty. As Fleetwood points out, however, this incident occurred eight months after

the warranty expired.

Fleetwood's limited warranty expired on March 27, 2005.  Saunter testified that the black water tank issue occurred sometime in December, 2005.  Fleetwood also notes that it expressly limited the duration of any implied warranties to one year. Further, Saunter failed to notify Fleetwood when the black water tank malfunctioned. And, she admits there have been no issues with the black water tank since her husband repaired it.

Because this problem no longer exists and it occurred after the express warranty expired, Saunter fails to produce evidence of a genuine issue of material fact on her claim for breach of express and implied warranty against Fleetwood on this issue.  *See Treadway*, 2004 WL 3372010 at *9-10.

## III.    Bank of America

Finally, Bank of America contends that summary judgment should be granted on its behalf for the same reasons as Michal.  Saunter seeks to hold Bank of America accountable for all claims arising out of the agreement.  It is difficult to see how Bank of Americ, the financier, is liable under any of Saunter's causes of action.

M.C.L. § 492.114a(b) provides: "[a] holder of an installment sale contract is subject to all the claims and defenses of the buyer arising out of the installment transaction, but the buyer's recovery shall not exceed the amount paid to the holder thereunder."  Consequently, Bank of America is subject to the same claims Saunter can bring against Michal.  M.C.L. § 492.114a(b); *see also Kolscielny v. Ford Motor Co.*, No. 05-527127-NZ, 2006 WL 1726488 (Mich. Ct. July 21, 2006).

Since the Court finds that Saunter does not have a viable claim against Michal, Saunter cannot pursue a cause of action against Bank of America.

The Court grants Bank of America summary judgment.

## V.     CONCLUSION

For the reasons stated, the Court **GRANTS** Defendants' motion.  Trial will proceed against Fleetwood on: (1) Plaintiff's breach of warranties claim; (2) breach of MCPA claim; and (3) breach of MMWA claim.

**IT IS ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  May 8, 2007

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on May 8, 2007.

S/Linda Vertriest
Deputy Clerk